# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0944** (Harrison County 18-F-97-1)

**Vincent Paul Davis,**
**Defendant Below, Petitioner**

**FILED**

**October 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Vincent Paul Davis, by counsel Eric D. Householder, appeals the Circuit Court of Harrison County's September 27, 2018, order sentencing him to not less than one nor more than ten years of incarceration following his breaking and entering conviction. Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 4, 2017, a new townhome complex was nearing completion when William Barnett, who lived nearby, noticed unusual activity at one of the townhomes. Mr. Barnett retrieved his camera and began taking pictures of three individuals loading appliances, including a refrigerator, heater, water heater, and HVAC blower motor, onto a truck trailer parked behind the townhome while his wife phoned the police. After the three individuals noticed Mr. Barnett taking pictures, two ran into the townhome while the third removed the items from the trailer. The third individual then got into his truck and drove away.

Patrolman Jeremy Randolph with the Clarksburg Police Department responded to the townhomes and observed petitioner driving the truck and empty trailer away. Patrolman Randolph initiated a stop of petitioner's vehicle, and interviewed petitioner regarding his presence at the townhomes. Petitioner stated that he was asked by two individuals, who had noticed petitioner's trailer, to assist with hauling materials for them from the townhomes to a storage unit in exchange for fifty dollars. The individuals claimed that their father owned the townhomes. As petitioner was smoking a cigarette during the loading process, he noticed a man taking pictures. Petitioner informed the two other men of this fact and they ran into the townhome. Petitioner claimed that he then realized something was amiss and unloaded the trailer. As he was driving away, he heard Patrolman Randolph's sirens and stopped his truck.

1

On May 9, 2018, petitioner was indicted on one count of breaking and entering in violation of West Virginia Code § 61-3-12.[1] Petitioner was tried on July 12, 2018. At trial, Mr. Barnett testified regarding his observations of the individuals at the townhomes:

Q.    Did you see all three of them going in and out of that unit?

A.    I seen these two coming out, that's the first time I seen them.

Q.    Okay. But you had seen the guy in the red shirt [petitioner] come out of that unit before then?

A.    Correct.

. . . .

Q.    Okay. So you've seen [petitioner] walk out of that townhouse?

A.    Right out of that last door.

Q.    From this vantage point? You see him walk out of the townhouse?

A.    Yep.

Q.    Okay. Is it possible that [petitioner] was smoking a cigarette around the corner and you didn't see him?

A.    No.

Q.    That's not possible?

---

[1]At the relevant time period and in relevant part, West Virginia Code § 61-3-12 (2009) provided that

> [i]f any person shall, at any time, break and enter, or shall enter without breaking, any office, shop, underground coal mine, storehouse, warehouse, banking house or any house or building, other than a dwelling house or outhouse adjoining thereto or occupied therewith, any railroad or traction car, propelled by steam, electricity or otherwise, any steamboat or other boat or vessel, or any commercial, industrial or public utility property enclosed by a fence, wall or other structure erected with the intent of the property owner of protecting or securing the area within and its contents from unauthorized persons, within the jurisdiction of any county in this state, with intent to commit a felony or any larceny, he or she shall be deemed guilty of a felony and, upon conviction, shall be confined in a state correctional facility not less than one nor more than ten years.

A.      No.

Q.      Not at all?

A.      No.

Q.      I mean, let's be honest. You can't see the entrance to that townhouse from this vantage point?

A.      I seen him come out of that building right there.

Q.      You didn't get a picture of him come out of the building, did you?

A.      He stepped out and I pulled the camera up and I shot.

Q.      But your testimony is that you saw him inside that building, not just standing back there in the back?

A.      I saw him coming out of that building right there, that first door, then put that thing on the trailer.

Q.      Physically saw him inside the townhouse?

A.      He was standing right at that door—

Q.      Standing at the door, that's my point.

A.      —at that door.

Q.      Standing at the door?

A.      Right.

Q.      So you never saw him in the townhouse. So it's possible that somebody, these other two guys—

The court interjected and instructed counsel to allow the witness to finish answering the question. Questioning then resumed:

Q.      Okay. So you saw him at the door?

A.      Right at the door.

Q.      Right at the door?

A.      Yep.

Q.    Okay. So is it possible that these other two guys laid this thing outside the door, [petitioner] picked it up, and took it to the trailer?

A.    No, he—

Q.    That's not possible?

A.    That thing was setting in the doorway. He wretched [sic] in, grabbed it, and put it on his truck.

Q.    So now you saw him in the townhouse?

A.    No, he wasn't in—he was standing at the door, wretched [sic] in right there, grabbed it, took it to his truck.

Q.    Okay. So you never saw him walk into the townhouse?

The State objected to this question, asserting that it had "been asked like [fifty] times." The court sustained the objection at a bench conference with counsel, noting that the witness "specifically [said] yes he did . . . see him come out of the townhouse."

In addition to Mr. Barnett's testimony that he saw petitioner and two other individuals entering the townhome, removing appliances from it, and loading those appliances onto petitioner's truck, the townhome complex's owner testified that no one had permission to be on the property or enter any of the townhouses on November 4, 2017.

Following its deliberations, the jury found petitioner guilty of breaking and entering. The circuit court sentenced petitioner to an indeterminate term of incarceration of not less than one nor more than ten years, which the court memorialized in its September 27, 2018, order. It is from this order that petitioner appeals.

On appeal, petitioner argues that the evidence at trial was insufficient to support his conviction. Petitioner claims that Mr. Barnett "conceded that, from his vantage point, he could not see the entrance to the townhouse," that petitioner "was only standing by the door," and that petitioner "did not enter the building, but reached in and picked up something." Petitioner highlights that no fingerprint or footprint evidence was collected to place him inside the townhouse. Petitioner also claims that the State misinterpreted one of Mr. Barnett's pictures to create an inference that petitioner arrived to the townhomes with a dolly in the bed of his truck, despite Mr. Barnett's testimony that the picture was taken as petitioner drove away from the townhome after unloading the appliances.[2] Petitioner claims that this inference "should not have been drawn at all."

---

[2]The State asked petitioner at trial, "And that's your dolly in the back of the truck; correct?" Petitioner responded, "No." The State then said, "Well, Mr. Barnett testified that that

(continued . . . )

In reviewing challenges to the sufficiency of the evidence to support a conviction, this Court

> examine[s] the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Additionally, it is well-settled that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3, in part.

Petitioner's insufficiency of the evidence claim centers on his contention that there was no evidence that he entered the property after Mr. Barnett "conceded" that he never saw petitioner enter the townhome. We disagree. Here, Mr. Barnett specifically testified that he observed petitioner exiting the townhome, and he made clear that it was not possible that petitioner only stood outside the door and loaded the appliances from outside the townhome. Despite petitioner's repeated attempts to establish that Mr. Barnett "never saw him walk into the townhouse," the court clearly noted that Mr. Barnett had already indicated that he saw petitioner "come out of the townhouse." Mr. Barnett's testimony provided sufficient evidence that petitioner, in fact, entered the townhome.

Petitioner's arguments concerning the picture of the dolly likewise do not entitle him to relief. Petitioner, first, fails to explain how the State's misstatement and any related inference made at trial resulted in insufficient evidence of any essential element of the crime. Also, petitioner made clear at trial that the dolly did not belong to him, that one of the other gentlemen

---

was the first picture he took when you got on scene. So why did you take the dolly out of the building and put it in the back of your truck when you first got there?" Petitioner replied, "I didn't put it in the back of my truck, and that's not the first picture. . . . One of the gentlemen must have [put the dolly in the back of the truck.]"

present at the townhome "must have" placed it in the back of his truck, and that the picture in question was not the first one taken by Mr. Barnett. Mr. Barnett similarly testified that the photograph was taken as petitioner's vehicle was exiting the townhome complex and that he began taking pictures after petitioner's truck had already arrived at the complex. In light of this specific testimony, as well as the other testimony offered by Mr. Barnett and the townhome complex owner, we find that the State's singular misstatement did not result in an insufficiency of the evidence on any essential element of the crime of breaking and entering and find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6